168 So. 573

**SHERTZER v. WILLIAMS, Superintendent of Banks.**

**5 Div. 218.**

Supreme Court of Alabama.

April 30, 1936.

Rehearing Denied June 11, 1936.

Steiner, Crum & Weil, of Montgomery, for appellant.

jurisdiction over the trust estate, to require appellee, as superintendent of banks, liquidating the Macon County Bank, to pay to petitioner, as the trustee in bankruptcy of W. L. Shepherd Lumber Company, a dividend of 12½ per cent. on an aggregate sum of $13,067.54 instead of the reduced sum of $8,151.41.

It appears from the petition and the agreed statement of facts, upon which the cause was heard, that the Macon County Bank closed its doors, and was placed in the hands of the state superintendent of banks for liquidation, on May 6, 1931, and that the affairs of said bank have since been in course of liquidation by such officer.

It also appears that at the time the bank closed its doors there was on deposit to the credit of petitioner the sum of $13,067.54.

It appears also from the petition and agreed statement of facts that the Macon County Bank, by an order of the United States District Court, had been designated as a depository for the funds belonging to the bankrupt estates of W. L. Shepherd Lumber Company and J. B. Cofield. On deposit, at the time the said bank closed its doors, there was to the credit of the trustee of the latter estate the sum of $222.94.

In order to qualify as such depository, the Macon County Bank was required to execute bond in the sum of $5,000, with sufficient surety to be approved by the judge of the District Court of the United States for the Northern Division of the Middle District of Alabama. On July 22, 1930, the said bank made the required bond, with the United States Fidelity & Guaranty Company as surety.

In order to induce the United States Fidelity & Guaranty Company to become the surety on said bond; the Macon County Bank entered into a written agreement with the said surety to hold it harmless upon the undertaking, and to that end deposited with the First National Bank of Birmingham, Ala., certain of the bank's assets, to wit, five county of Conecuh five and one-half school warrants, in the sum of $1,000 each, and which were to be held by said First National Bank of Birmingham, Ala., for the protection of the said named surety. The last named bank was authorized upon certain contingencies to sell the said bonds and to apply the proceeds "to reimburse the party of the sec-

Powell & Powell, of Tuskegee, for appellee.

KNIGHT, Justice.

Petition by appellant, filed in the circuit court of Macon county, which had assumed

ond part (United States Fidelity and Guaranty Company) for all loss sustained and all payments made by it in the discharge of its legal obligation under the aforesaid bond for the full amount of the bond or other securities held in escrow under this agreement."

It further appears that, upon the default of the Macon County Bank, the First National Bank of Birmingham, Ala., sold the five Conecuh county school warrants, obtaining therefor the aggregate sum of $4,011.40, and this money · was paid to the said United States Fidelity & Guaranty Company on August 22, 1931. This payment was made to the surety company prior to the filing of the petition in this cause. Thereafter the United States Fidelity & Guaranty Company paid to the petitioner, as trustee of the W. L. Shepherd Lumber Company, the sum of $4,916.13, "that being the amount of the guaranty company's liability to appellant on the bond, ascertained by taking the proportion that appellant's deposit in the bank when it closed bore to the whole deposit of the bankruptcy funds in the bank at the time."

It appears that the appellant had no "information, knowledge or notice" of the indemnity agreement made by the Macon County Bank with the guaranty company, or of the deposit of the securities, or of the sale of the securities and the payment of the proceeds to the guaranty company. Appellant knew nothing of said transaction.

Upon the payment, on September 25, 1931, to the trustee of the said sum of $4,916.13 by the said United States Fidelity & Guaranty Company, the said trustee and M. S. Carmichael, as referee in bankruptcy, executed to the said surety company a release and discharge from any further or additional liability to the said L. L. Shertzer, as trustee of W. L. Shepherd Lumber Company, and to said bankrupt's estate on account of said depository bond.

This release contained the following further stipulation:

"And the undersigned L. L. Shertzer, as trustee as aforesaid and pursuant to said order of said referee in bankruptcy, does hereby agree and stipulate that when the undersigned L. L. Shertzer, as trustee as aforesaid, has received on his claim as· trustee of said bankrupt estate against said Macon County Bank a sum of money which in addition to said sum of $4,916.-13, hereby acknowledged, aggregates the full amount of his claim as trustee of said estate against said Macon County Bank and the interest thereon, then said United States Fidelity and Guaranty Company will be entitled to any balance remaining unpaid on said claim against said bank, and shall then be subrogated to all rights of the said undersigned L. L. Shertzer as trustee of said estate, and said estate, against said bank for any balance then remaining on said claim.

"Witness our hands, this the          day of September, 1931.

"M. S. Carmichael,
"Referee in Bankruptcy.
"L. L. Shertzer
"As Trustee in Bankruptcy of W. L. Shepherd Lumber Company, Bankrupt."

It is to be noted that of the $4,916.13 paid to the said trustee, appellant here, the sum of $3,944.11 (apportioned to this account out of the $4,011.44) was derived from the sale of the five Conecuh county school warrants sold by the First National Bank of Birmingham, Ala., and paid over to the guaranty company. In other words, all but $972.02 of the amount paid by the guaranty company to petitioner were, in fact, funds of the Macon County Bank, and used in liquidation of the latter's indebtedness to the appellant.

Notwithstanding this fact, the appellant insisted in the court below, and renews the insistence here, that, on the distribution of the assets of the Macon County Bank, the dividend to be paid to appellant should be calculated on the amount due appellant by the insolvent bank as of the date of the closing of said bank.

This insistence is made in part upon the theory that the bond was made under the mandate of a federal statute and pursuant to an order of the federal District Court, and therefore, inasmuch as a federal statute or rights thereunder are involved, the rule of law applicable for the determination of such rights must be found in the decisions of the federal court, and the state courts are bound thereby.

We can agree fully with counsel for appellant that the interpretation of a federal statute by federal courts is binding on state courts (United States Fidelity & Guaranty Co. v. Benson Hardware Co.,

222 Ala. 429, 132 So. 622), but we have no such case before us.

We are here dealing with the assets of a state banking institution, which, by reason of unfortunate circumstances, has become insolvent, and its assets must be distributed, not according to any federal statute, but according to the laws of the state under which it derived its existence, and functioned, and according to which its affairs must be settled. The federal statutes and the decisions of the federal courts can exert no controlling influence in directing the distribution of the assets of an insolvent state banking institution. In such matters the state statutes and the decisions of the state courts control.

It is also insisted that, if the petitioner is not allowed to participate in the distribution of the assets of the Macon County Bank on the basis of the amount due petitioner at the time of the adjudged insolvency of the said bank, or at the time it closed its doors and went into the hands of the superintendent of banks for liquidation, then, and in such event, the right of the guaranty company to subrogation, equitable or conventional, will be endangered, or possibly lost.

One sufficient answer to the contention is that the guaranty company is making no such contention. The proceeding now before the court is between the superintendent of banks, liquidating the affairs of the Macon County Bank, and the petitioner. Any such claim to subrogation must be interposed by the guaranty company for itself, and cannot be asserted for it by petitioner. If, and when, the time shall arise when the question of subrogation may be a pertinent issue, such an issue must be presented by the guaranty company. Until petitioner's claim is paid in full, and doubtless it will never be, no occasion will arise to even consider the question of subrogation. Pickens County et al. v. Johnson, 227 Ala. 190, 149 So. 252; Corinth State Bank v. First National Bank of Florence, 217 Ala. 632, 117 So. 216; Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220; Atherton v. Tesch, 202 Ala. 448, 80 So. 832; H. H. Montgomery, Sup't of Banks, v. Wadsworth, 226 Ala.

667, 148 So. 419. At this time the question of whether a case for subrogation will arise is wholly conjectural. We will not now consider it.

This case is controlled by the rule announced in the case of First National Bank v. Green, 221 Ala. 201, 128 So. 394, in which this court gave its approval to what has been called the Maryland rule, wherein the dividend is based, or must be computed, on the amount of the debt as of the date the dividend is declared and as reduced by collections on collateral before that date.

In that case we refused to adopt or to follow the English chancery rule, as applied and followed by the Supreme Court of the United States. Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640; Aldrich v. Chemical National Bank, 176 U.S. 618, 20 S.Ct. 498, 44 L.Ed. 611.

It is not disputed that, at the time the dividend was declared in this case, the indebtedness of the Macon County Bank to the appellant, as trustee in bankruptcy of the estate of W. L. Shepherd Lumber Company, bankrupt, had been reduced from $13,067.54 to $8,151.41, and it was upon this last-named sum that the dividend offered to be paid to the petitioner was based and calculated.

Following the rule of our decisions, as declared in the cases of First National Bank v. Green, supra, Philadelphia Warehouse Co. v. Anniston Pipe Works, 106 Ala. 357, 18 So. 43, the trial court committed no error in decreeing that appellant was entitled to a dividend based on the amount remaining unpaid on his claim as of the date the dividend was declared, and not on the amount due him on the date of the insolvency of the bank, or the date on which it closed its doors, and was placed in the hands of the state superintendent of banks for liquidation.

The decree of the circuit court, therefore, is due to be affirmed, and it is accordingly so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.